UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**GENE A. WILSON,**

   Plaintiff,

v.                                            No. 4:24-cv-01126-P

**BIT INVESTMENT EIGHTY-FIVE, LLC, ET AL.,**

   Defendants.

## MEMORANDUM OPINION & ORDER

Before the Court are two motions for summary judgment: one filed by Defendant BIT Investment Eighty-Five, LLC (BIT) (ECF No. 31), and the other filed by Defendant General Motors, LLC (GM) (ECF No. 25). Having considered both Motions, other relevant docket filings, and the applicable law, the Court will **DENY** both Motions.

## BACKGROUND

This case arises out of an injury sustained when a piece of metal broke off a bay door and struck an employee. On October 4, 2014, GM signed a lease agreement (2014 Lease Agreement) for property located in Grand Prairie, Texas, with BIT's predecessor-in-interest, WR Logistics Crossing, LLC. As the successor-in-interest to the 2014 Lease Agreement, and assuming the role as lessor, BIT retained certain duties relating to maintenance of the property. Specifically, the 2014 Lease Agreement required BIT to "replace the roof, the structural elements of the Building and the parking lot as needed," and subject to that obligation, "maintain, repair, and replace the parking lot, exterior lights, landscaping, interior sprinkler systems, plate glass, roof, exterior walls, concrete slab floor, beams, columns, joists, masonry walls, load bearing partitions and inner structural portions of the Building . . . ." GM retained responsibility to "maintain . . . the remaining portions of the Building and all portions of the Premises not described [above]."

Eighteen months after the 2014 Lease Agreement, on March 29, 2016, GM licensed use of the property (2016 License Agreement) to Logistics Insight Corporation (Logistics).[1] Like the 2014 Lease Agreement, but this time as a license between GM and Logistics, both GM and Logistics retained responsibilities for maintenance and repair. GM was responsible for "replacing the roof, the Warehouse structure, and the parking lot . . . ." Logistics was responsible for "maintain[ing] . . . the License Area (including all structural and nonstructural portions thereof) in good repair and appearance . . . ."

On March 20, 2023, Plaintiff Gene A. Wilson, an employee of Logistics, was struck by a piece of metal that broke off an overhead door while pulling the door closed. Wilson alleges that his injury was sustained in the course of his employment and on premises controlled by BIT and GM. Wilson brings claims for premises liability against BIT and GM.

GM filed its Motion on March 29, 2025, arguing that GM cannot be held liable for Wilson's injuries because it had no actual control or contractual obligation over the property in question at the time of injury. BIT filed its Motion on April 15, 2025, making similar arguments. The Court will address both Motions.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact" and "is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence presented would allow a reasonable jury to return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" when it might affect the outcome of a case. *Id.* Generally, the "substantive law will identify which facts are material," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

---

[1]Plaintiff voluntarily dismissed Defendant Logistics from this suit on June 27, 2025, several months after both Motions were filed.

When determining whether summary judgment is appropriate, the Court views the evidence in the light most favorable to the nonmovant. *First Am. Title Ins. Co. v. Cont'l Cas. Co.*, 709 F.3d 1170, 1173 (5th Cir. 2013). In conducting its evaluation, the Court may rely on any admissible evidence available in the record but need only consider those materials cited by the parties. FED. R. CIV. P. 56(c)(1)–(3). The Court need not sift through the record to find evidence in support of the nonmovant's opposition to summary judgment; the burden falls on the moving party to simply show a lack of evidence supporting the nonmovant's case. *See Malacara v. Garber*, 353 F.3d 393, 404–05 (5th Cir. 2003).

## ANALYSIS

Both Motions concern the threshold question in a premises liability case—whether the defendant owed the plaintiff a legal duty. *See, e.g.*, *General Elec. Co. v. Moritz*, 257 S.W.3d 211, 217 (Tex. 2008). The existence of a duty is a question of law. *See, e.g.*, *HNMC, Inc. v. Chan*, 683 S.W.3d 373, 380 (Tex. 2024). The plaintiff must show that the defendant "possessed—that is, owned, occupied, or controlled—the premises where injury occurred." *Wilson v. Texas Parks and Wildlife Dept.*, 8 S.W.3d 634, 635 (Tex. 1999). Exclusive control is not required—Texas law merely requires "sufficient control." *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 479 (Tex. 2017). And "a party who does not own, occupy, or control premises may nevertheless owe a duty of due care if it undertakes to make the premises safe for others." *Wilson*, 8 S.W.3d at 635.

In construing the two agreements between the Parties, the "primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument[s]." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). "Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense." *Id.*

### A. BIT's Liability as Lessor

As the successor-in-interest to the 2014 Lease Agreement, it is unclear whether BIT owed a duty to Wilson. Generally, a lessor does not

3

owe a lessee or a lessee's invitees for dangerous conditions on leased premises. *See, e.g.*, *Johnson County Sherriff' Posse, Inc. v. Endsley*, 926 S.W.2d 284, 285 (Tex. 1996). Exceptions may apply "for injuries arising from (1) the lessor's negligent repairs, (2) concealed defects of which the lessor was aware when the premises were leased, and (3) a defect on a portion of the premises that remained under the lessor's control." *Kukis v. Newman*, 123 S.W.3d 636, 639–40 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Plaintiff argues that that third exception applies because BIT had both contractual and actual control of the premises.

BIT leased the property to GM through the 2014 Lease Agreement, and maintenance responsibilities were allocated to both parties. BIT was required to "replace the roof, the structural elements of the Building and the parking lot as needed." ECF No. 31 Ex. A § 8.2(a). And subject to that obligation, "maintain, repair, and replace the parking lot, exterior lights, landscaping, interior sprinkler systems, plate glass, roof, exterior walls, concrete slab floors, beams, columns, joists, masonry walls, load bearing partitions and inner structural portions of the building . . . ." *Id.* § 8.2(b). GM was required to "maintain . . . the remaining portions of the Building and all portions of the premises not described [above]." *Id.* § 8.3.

These terms do not make clear who retained responsibility over doors. The contractual duties retained by BIT related primarily to structural elements of the warehouse. But Section 8.2(b) also contained a list of other specific items (lights, sprinklers, landscaping, etc.), suggesting that anything *not* structural would be explicitly identified. "Doors" are not listed. On top of the additional items identified, the list also states that BIT has responsibility over "inner structural portions of the building." The Lease also does not clarify whether "doors" were included in either "structural elements of the building" or the "inner structural portions of the building." The Court notes that unlike walls, beams, columns, and joists, doors move by opening and closing, making it questionable whether they should be considered "structural elements of the building." However, neither GM nor BIT provide sufficient evidence to show that "doors" are definitively *not* a "structural element" or "inner structural portion" of the building.

4

Because the Parties do not present clear evidence one way or another, the Court declines to decide whether a door is part of the building's "structural elements" or "inner structural portions."[2] For this reason, the Court cannot conclude there is no dispute of material fact that BIT did not retain control of the property relating to Wilson's injury. BIT's Motion will be denied.

## B. GM's Liability as Licensor

For similar reasons as those stated above, it is unclear whether GM owed a duty to Plaintiff to maintain the premises. Again, to impose a duty for premises liability, the plaintiff must show the defendant "possessed—that is, owned, occupied, or controlled—the premises where the injury occurred." *Wilson*, 8 S.W.3d at 635. Generally, a licensor is not liable for premises defects absent knowledge of the alleged defect. *Wal-Mart Stores, Inv. v. Miller*, 102 S.W.3d 706, 709 (Tex. 2003).

The 2016 Licensing Agreement, like the 2014 Lease Agreement, split maintenance responsibilities over the premises.[3] GM retained certain responsibilities as licensor, and Plaintiff's employer, Logistics, retained others as licensee. Section 7 of the 2016 Licensing Agreement titled "Maintenance, Repairs and Alterations," allocated the various

---

[2]Wilson argues that a subsequent property management agreement further demonstrates that BIT retained the duty to maintain the premises including the door. In January 2023, BIT hired Cushman & Wakefield to manage its obligations on the property, including by making necessary repairs. However, the 2023 agreement only required Cushman & Wakefield to make repairs "that are the obligations of [BIT] to tenants of the property." ECF No. 41 Ex. B ¶ 2. Thus, the 2023 agreement did *not* expand any obligations that BIT previously agreed to in the 2014 Lease Agreement, and the Court does not rely on this agreement in reaching its conclusion that summary judgment is not warranted.

[3]Wilson raises the argument that GM did not have authority to execute the 2016 License Agreement based on the terms of the 2014 Lease Agreement. *See* ECF No. 25 at 9 ("GM LLC has not provided any evidence to show that it assigned its right to possess, control, or occupy the premises in accordance with the Lease. The Lease requires the express, written consent from the landlord to assign any rights or sublet the premises in whole or in part."). BIT, the lessor in this scenario, has not made this argument, and the Court declines to rule on such an argument at this juncture.

responsibilities to GM (Licensor) and Logistics (Licensee). Section 7(a) states:

> Licensor will be responsible for replacing the roof, the Warehouse structure, and the parking lot, unless such replacement is due to the negligent acts or omissions of Licensee or its employees, agents, suppliers, contractors, vendors, representatives, or invitees (together, Licensee Parties).

ECF No. 25-1 § 7(a). Thus, much like BIT in the 2014 Lease Agreement, GM took responsibility to "replace" structural portions: the roof, Warehouse Structure, and the parking lot. As for Logistics, Section 7(b) states:

> Licensee shall maintain the License Area (including all structural and non-structural portions thereof) in good repair and appearance, ordinary wear and tear excepted. Licensee shall promptly make all alterations, repairs and replacement of every kind and nature, whether foreseen or unforeseen, that may be required to comply with the foregoing requirement of this Section 7(b), subject to Licensor's obligations in the Section 7(a).

*Id.* § 7(b). As stated in 7(b), Logistics took responsibility to "maintain" the "License Area."

The question here is whether the overhead door is considered part of the "warehouse structure" (GM's responsibility) or the "License Area" (Logistics's responsibility). "License Area" is first used in Section 1 of the 2016 License Agreement: "Licensor hereby grants the Licensee an exclusive license . . . for Licensee to enter upon the Property (the 'License Area') for the Permitted Use." *Id.* § A. As shown in this Section, the 2016 License Agreement refers to "the Property" as the "License Area" when talking about the Licensee's use of the premises. And "the Property" is defined in the recitals section as "certain property located at 2305 W. Marshall Drive in Grand Prairie, Texas, containing an approximately 667,635 s.f. warehouse (the 'Warehouse') and parking (the 'Property') . . . ." *Id.* The Property thus refers to the entirety of the 667,635 square foot warehouse along with the parking lot. This means that the License Area likewise constitutes the entirety of the warehouse and parking lot and is used when referring to the Licensee's use of the premises.

6

Notwithstanding this broad definition of License Area, the Court cannot discern whether "doors" fell within Logistics' responsibility over the "License Area" or GM's responsibility over the "warehouse structure." While the "License Area" seemingly covers the entirety of the property, interpreting the 2016 License Agreement as assigning *all* responsibility to Logistics would render Section 7(a) meaningless. The Court finds such interpretation, absolving GM of any responsibility, inconsistent with the Parties' intentions. This is further confirmed by the last part of Section 7(b), which states that Logistics' responsibilities are, "subject to Licensor's obligations in the Section 7(a)."

The Court also notes the distinction between "replace" in Section 7(a) and "maintain" in Section 7(b) but finds such distinction inconclusive for determining who had responsibility over the door. On one hand, Section 7(a), referring to GM's maintenance responsibilities, requires GM to "replace" the "Warehouse structure" if necessary. On the other hand, Section 7(b), referring to Logistics' maintenance responsibilities, indicates Logistics would "maintain" the License Area, which—when compared to Section 7(a)—suggests responsibility over day-to-day maintenance issues. Still, the Court is uncertain whether the repairs needed were something that required "replacing" or "maintaining." Such a factual distinction might further reveal whether GM had control over the door at issue.

The Court cannot find there is no dispute of material fact over whether GM retained contractual control of the property at issue. Accordingly, the Court will deny GM's Motion.

## CONCLUSION

For the reasons stated above, the Court **DENIES** both Motions.

**SO ORDERED** on this **7th day of August 2025.**

**MARK T. PITTMAN**
UNITED STATES DISTRICT JUDGE